IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK SUMNER BOTHUM,<br><br>                            Plaintiff,<br><br>  vs.<br><br>ANDREW M. SAUL, Commissioner,<br>Social Security Administration,<br><br>                          Defendants. | No. 3:20-cv-0196-HRH |

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381-1383f. Plaintiff Mark Sumner Bothum has timely filed his opening brief,[1] to which defendant Andrew M. Saul has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On July 16, 2015, plaintiff filed an application for disability benefits under Title II and on February 2, 2017, he filled an application for disability benefits under Title XVI. Plaintiff alleges that he became disabled on May 22, 2015. Plaintiff alleges that he is disabled due

---

[1]Docket No. 17.

[2]Docket No. 19.

to multiple sclerosis and neuropathic pain. Plaintiff's application was denied, and plaintiff requested a hearing. After an administrative hearing on February 15, 2019, an administrative law judge (ALJ) denied plaintiff's application. On June 25, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's unfavorable decision, thereby making the ALJ's April 4, 2019 decision the final decision of the Commissioner. On August 11, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

General Background

Plaintiff was born on November 25, 1960. He was 54 years old as of the alleged onset of disability date. Plaintiff has a college degree in laser engineering and electronics engineering. Plaintiff's past relevant work includes work as a university instructor, retail sales in a hardware store, and an electronics technician.

The ALJ's Decision

The ALJ first found that plaintiff met "the insured status requirements of the Social Security Act through June 30, 2016."[3]

The ALJ next applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 16.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(continued...)

At step one, the ALJ found that plaintiff "has not engaged in substantial gainful activity since May 22, 2015, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff "has the following severe impairments: multiple sclerosis and degenerative disease of the thoracic spine. . . ."[6] The ALJ found plaintiff's bilateral foot pain and respiratory impairment nonsevere.[7]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[4](...continued)
        Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
        Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
        Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
        Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 16.

[6]Admin. Rec. at 16.

[7]Admin. Rec. at 16-17.

in 20 CFR Part 404, Supbart P, Appendix 1. . . ."[8] The ALJ considered Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine), and Listing 11.09 (multiple sclerosis).[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows. He can stand and/or walk for 4 hours and sit for 6 hours in an 8-hour workday. He can occasionally perform foot control operation bilaterally. He can balance and stoop frequently. He can climb ramps, stairs, ladders, ropes, or scaffolds occasionally. He should avoid concentrated exposure to non-weather related extreme cold and extreme heat, excessive vibration, unprotected heights and hazardous machinery. He should have a sit/stand option allowing him to alternate sitting or standing positions without going off task.[[10]]

The ALJ discounted plaintiff's pain and symptom statements because his conditions improved with medication, his statements were inconsistent with the medical evidence of record, and his statements were inconsistent with his daily activities.[11]

---

[8]Admin. Rec. at 17.

[9]Admin. Rec. at 17.

[10]Admin. Rec. at 17-18.

[11]Admin. Rec. at 24-25.

The ALJ gave limited weight[12] to Dr. Gonzales' opinion.[13] The ALJ gave little weight[14] to Dr. Pearson's opinion.[15] The ALJ gave some weight[16] to Dr. Backlund's opinion[17] but more weight[18] to Dr. Andersen's opinion.[19]

---

[12] Admin. Rec. at 26.

[13] On August 16, 2017, Frank Gonzales, Ph.D., a nonexamining source, opined that plaintiff had no limitations as to understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Admin. Rec. at 75.

[14] Admin. Rec. at 26.

[15] On September 21, 2018, Dr. Pearson, a treating physician, opined that plaintiff could stand/walk for less than 2 hours, could sit for about 4 hours, would need a break of 30 minutes every two hours, needed a job that permits shifting positions at will, needed to use a cane when walking/standing in the winter, could occasionally lift/carry 10 pounds; could frequently look down, turn head left or right, look up, and hold head in static position; could occasionally twist and stoop; could rarely crouch/squat, climb ladders/stairs; had no limitations as to reaching, fingering, and handling; and needed to avoid extremes of temperature, both hot and cold. Admin. Rec. at 824-826. Dr. Pearson also opined that plaintiff's pain and other symptoms would frequently interfere with attention and concentration needed to perform even simple work tasks and that he was only capable of low stress jobs. Admin. Rec. at 824.

[16] Admin. Rec. at 25.

[17] On August 16, 2017, Dr. William Backlund, an nonexamining physician, opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; and sit for 6 hours; was unlimited as to pushing/pulling, climbing ramps and stairs, kneeling, crouching, and crawling; could occasionally climb ladders/ropes/scaffolds, could frequently balance and stoop; and should avoid concentrated exposure to extreme cold, extreme heat, hazards, and vibration. Admin. Rec. at 76-77.

[18] Admin. Rec. at 25.

[19] Dr. Stephen Andersen testified as a medical expert at the administrative hearing. Dr. Andersen opined that plaintiff

(continued...)

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a university instructor."[20]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from May 22, 2015, through the date of this decision. . . ."[21]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence

---

[19](...continued)
could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds; stand or walk four hours out of an eight-hour day, could sit six hours out of an eight-hour day. Push/pull would be limited to four hours for foot controls, unlimited for hand controls. Postural limitations would be occasional ramps and stairs, occasional ladders, balance; three-point stooping, frequent; kneeling, crouching, and crawling, no limitations; no manipulative limitations except foot control[.] [N]o visual or communicative limitations. Environmental limitations: avoid concentrated exposure to cold or heat; . . . concentrated vibration[,] concentrated fumes, odors, dust, et cetera[,] hazards [and] unprotected heights.

Admin. Rec. at 40-41.

[20]Admin. Rec. at 26.

[21]Admin. Rec. at 27.

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff argues that the ALJ erred in rejecting his pain and symptom statements as they related to his bilateral foot pain.[22] Plaintiff contends that if the ALJ had not rejected his statements about his bilateral foot pain, which is associated with his multiple sclerosis, then the ALJ would have included limitations related to his bilateral foot pain in the RFC. Plaintiff further contends that if the ALJ had included limitations in the RFC related to his

---

[22]The ALJ found plaintiff's bilateral foot pain to be a nonsevere impairment at step two, which was most certainly an error, but "omissions at step two are often harmless error if step two is decided in plaintiff's favor[,]" which it was in this case. Nicholson v. Colvin, 106 F. Supp. 3d 1190, 1195 (D. Or. 2015) (citing Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)). Thus, plaintiff has not raised a step two error argument.

-7-

bilateral foot pain, then it is likely he would not have been able to perform his past relevant work as a university instructor, which is classified as light work.

> [W]hen a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms . . . are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities.

Lourdes C. v. Saul, Case No. 8:19-cv-01531-JC, 2020 WL 2733666, at *3 (C.D. Cal. May 25, 2020) (quoting 20 C.F.R. §§ 404.1529(a), (c)(4); SSR 16-3p). "When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities." Id. "In such cases, when there is no affirmative finding of malingering, an ALJ may 'reject' or give less weight to the individual's subjective statements 'only by providing specific, clear, and convincing reasons for doing so.'" Id. (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "This requirement is very difficult to satisfy." Id.

The first reason given by the ALJ for discounting plaintiff's pain and symptom statements was that plaintiff's conditions improved with medication. Defendant argues that the ALJ properly found that plaintiff's symptoms improved with medication, "at least when

-8-

he took it as prescribed."[23] Defendant then proceeds to argue that the record shows that plaintiff did not always take his medications as prescribed and that he did not always follow the recommended treatment plan. But, the ALJ did not discount plaintiff's pain and symptom statements because he did not follow treatment recommendations. "Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225. The court may only review "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). The issue here is whether there is substantial evidence supporting the ALJ's finding that plaintiff's bilateral foot pain improved with medication, not whether plaintiff was taking his medications as prescribed and following the recommended treatment plan.

In support of his finding that plaintiff's conditions improved with medication, the ALJ cited to pages 560, 568, 575, 581, 595, 601, 619, 638, 644, 665, and 667 of the administrative record. These are all treatment notes from the Algone Interventional Pain Clinic. Plaintiff argues that this evidence does not support a finding that his bilateral foot pain improved with medication.

Page 667 is a treatment note from August 19, 2015. Dr. Peterson noted that "[c]hanges in medication last month have improved the patient[']s pain[,]" but he also noted

---

[23]Answering Brief at 5, Docket No. 19.
-9-

that "[l]ast visit I recommended prolotherapy. I explained I would like to start with one injection and if the patient even gets 10% relief, will continue with prolotherapy. Patient is ready to schedule at this time. Dextrose injection was queued in office today; awaiting approval."[24]

Page 665 is a treatment note from September 8, 2015. Dr. Peterson's impression that day was that plaintiff "is stable on current medication regime but presents today stating his Norco is not lasting long enough, will increase Norco 10-325 from BID to TID."[25]

Page 644 is a treatment note from November 8, 2017. DO Scott-Calor noted that as for plaintiff's foot pain, he was "stable on current medication regimen" and she advised him "to seek better foot wear with more padding as he is currently wearing Crocs and these may be worsening his foot pain."[26]

Page 638 is a treatment note from December 7, 2017. PAC Alfonso noted that plaintiff was "using the Broadway cream, stated he cannot tell a difference when using it" and that he was "stable on current medication regimen[.]"[27]

Page 619 is a treatment note from February 15, 2018. PAC Alfonso again noted that plaintiff "is stable on current medication regimen" but also noted that plaintiff "was recently

---

[24]Admin. Rec. at 667.

[25]Admin. Rec. at 665.

[26]Admin. Rec. at 644.

[27]Admin. Rec. at 638.

changed from Tramadol to MS Contin ER. He states that the MS Contin works much better for him."[28]

Page 601 is a treatment note from May 10, 2018. PAC Alfonso noted that plaintiff's MS was stable on the current medication regime.

Page 595 is a treatment note from June 7, 2018. PAC Alfonso noted that plaintiff "reported that his callouses that [were] identified last visit [are] getting better with the lotion prescription. Foot pain at the ball of his foot is still present and no changes from last physical exam. I will refer patient to prosthetics for custom shoe/arch support insert. . . ."[29] PAC Alfonso also noted that plaintiff was "stable on current medication regime" and refilled his prescription for morphine.[30]

Page 581 is a treatment note from July 26, 2018; page 575 is a treatment note from August 21, 2018; and page 568 is a treatment note from September 18, 2018. In all of these notes, PAC Alfonso noted that plaintiff's MS was stable on the current medication regime.

Page 560 is a treatment note from October 16, 2018. Plaintiff reported that the topical cream he was using on his feet "work[ed] well for him" but the PA also "discussed injections

---

[28]Admin. Rec. at 619.

[29]Admin. Rec. at 595.

[30]Admin. Rec. at 595.

-11-

with patient today for both feet. I would like patient to follow up in 1 month with Dr. Musa for a re-eval. . . ."[31]

Defendant argues that these treatment notes show that plaintiff's bilateral foot pain was stable and defendant seems to suggest that means that there had been no significant decrease in functioning. Defendant contends that the medical evidence of record shows that while medications may not have cured plaintiff's bilateral foot pain, these medications were effective and allowed him to retain function throughout the relevant period. Defendant argues that the fact that plaintiff's doctors adjusted his medication and recommended additional treatment modalities does not mean that plaintiff's bilateral foot pain did not improve with medication, as the ALJ found.

The treatment notes on which the ALJ relied do show that plaintiff's bilateral foot pain was stable for a period of time. But, stable is not the same thing as improving. The ALJ did not reject plaintiff's pain and symptom statements because his conditions were stable. Rather, the ALJ rejected plaintiff's pain and symptom statements because his conditions improved with medication. But, that is not what these treatment notes show. These treatment notes merely show that for a period of time, plaintiff's bilateral foot pain was stable. They do not show that plaintiff's bilateral foot pain improved with medication. As such, these treatment notes are not substantial evidence supporting the ALJ's first reason for rejecting plaintiff's pain and symptom statements. Thus, the first reason given by the ALJ

---

[31]Admin. Rec. at 560.

Case 3:20-cv-00196-HRH Document 20 Filed 03/12/21 Page 12 of 19

for rejecting plaintiff's pain and symptom statements as they relate to his bilateral foot pain was not clear and convincing.

The second reason given by the ALJ was that plaintiff's pain and symptom statements were inconsistent with the evidence of record. The ALJ cited to a string of "objective clinical examinations" which showed that plaintiff "had normal coordination, full motor strength, normal posture, and a normal gait and station. . . ."[32] "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

Plaintiff does not dispute that his clinical examinations, at times, showed that he had full motor strength and normal coordination, posture, gait, and station. But, plaintiff argues that some of these examinations also showed that he was diagnosed with and being treated for disabling bilateral foot pain.[33] As a prime example, plaintiff points to a July 16, 2015, appointment, at which he had a normal gait, but at which he also received "nerve block injections in the bottom of his left foot."[34] Plaintiff also argues that the normal examination findings that the ALJ cited to do not undermine his pain and symptom statements as they relate to his bilateral foot pain because he also had abnormal exam findings. For example,

---

[32]Admin. Rec. at 24.

[33]Admin. Rec. at 559-560, 567-568, 574-575, 580-581, 587-588, 594-595, 600-601, 606, 612, 618, 624, 631, 637, 643, 649.

[34]Admin. Rec. at 489-490.

-13-

plaintiff had reduced sensation in the calf of each leg in 2015;[35] a positive Babinsky response on June 22, 2015,[36] "[d]ecreased sensation along bottom of foot bilaterally" on October 19, 2017,[37] tenderness in his forefeet bilaterally on October 16, 2015,[38] and "unsteady gait and paresthesia" on November 14, 2017.[39] Plaintiff argues that the ALJ ignored the abnormal exam findings in the record and instead only focused on the evidence that did not support disability. Plaintiff also contends that the ALJ seemed to dismiss the fact that the medical evidence of record shows that he was being treated for disabling bilateral foot pain, treatment that involved narcotic pain medication. Plaintiff insists that the evidence simply does not show that his statements concerning his bilateral foot pain were inconsistent with the medical evidence of record.

In response, defendant argues that plaintiff's statements related to his bilateral foot pain were plainly contradicted by the normal exam findings that the ALJ cited. Defendant insists that "the medical record was at odds"[40] with plaintiff's statements that "[a]ll mobility

---

[35]Admin. Rec. at 400, 440.

[36]Admin. Rec. at 460.

[37]Admin. Rec. at 649.

[38]Admin. Rec. at 661.

[39]Admin. Rec. at 798.

[40]Answering Brief at 4-5, Docket No. 19.

-14-

[was] affected due to increase in foot pain"[41] and that he had "[e]xtreme pain on standing or walking" and an "unsteady gait" due to his foot pain.[42] Defendant argues that the medical evidence of record shows that although plaintiff continued to report some foot pain, he had intact or only mildly reduced sensation in his feet, was able to walk with a normal, stable gait, and maintained normal strength and coordination.[43] Defendant contends that plaintiff is arguing that evidence which shows that he was receiving treatment for a chronic condition means that he is disabled, but defendant argues that is not the case because a chronic condition is not necessarily disabling. Defendant reminds plaintiff that "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Defendant argues that plaintiff wants the court to accept his interpretation of the evidence, which may be reasonable, but because the ALJ's interpretation was also reasonable, the court must uphold the ALJ's conclusion.

---

[41]Admin. Rec. at 318.

[42]Admin. Rec. at 302.

[43]See Admin. Rec. at 482 (normal gait but tenderness in bilateral forefeet), 497 (sensation intact in feet, normal gait), 499 (gait stable, sensation to light touch in feet intact, strength in ankle and toes normal), 649 (decreased sensation in bottom of feet, normal muscle strength, gait and posture), 773 (normal casual walking, sensation intact), 777 (normal casual walking, sensation intact), 787 (normal muscle strength, sensation intact, "normal casual walking with appropriate gait and arm swing"), 793 (normal muscle strength, sensation intact, "normal casual walking with appropriate gait and arm swing"), 821 ("[s]light decreased vibration and pinprick at the toes bilaterally" and "[s]lightly antalgic gait due to ingrown toe nail"), 837 (stable gait).

-15-

The problem with defendant's argument is that the ALJ's conclusion was not reasonable. While plaintiff did have some normal objective exam findings at times, he also had abnormal exam findings at times and he was treated for bilateral foot pain during the entire relevant time period, treatment that included narcotic pain medication, injections, and topical pain medication. Such treatment is consistent with plaintiff's statements regarding his bilateral foot pain, and the normal exam findings to which the ALJ cited do not constitute substantial evidence to the contrary. These normal exam findings do not render plaintiff's statements regarding his bilateral foot pain implausible. What the ALJ appears to have done here is "cherry-pick evidence to support [his] findings," rather than "review the whole record[.]" Lannon v. Comm'r of Social Security Admin., 234 F. Supp. 3d 951, 960 (D. Ariz. 2017) (citation omitted). The record as a whole is consistent with plaintiff's pain and symptom statements as they relate to his bilateral foot pain. Thus, the second reason given by the ALJ for discounting plaintiff's pain and symptom statements as they relate to his bilateral foot pain was not clear and convincing.

The third reason the ALJ gave for discounting plaintiff's pain and symptom statements was that the statements were inconsistent with plaintiff's daily activities. The ALJ found that plaintiff's "level of functioning . . . included a wide range of activities including household chores, laundry, some yard work, going out alone, driving, shopping in stores, managing personal financial transactions, reading magazines and novels, watching

movies, playing the guitar, and doing crossword puzzles."[44] The ALJ also noted that "treatment records show that he was a full time caretaker of his wife who was diagnosed with stage 4 lung cancer in June 2016 until her death in 2018. . . ."[45]

This was not a clear and convincing reason. "[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling . . . pain." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis omitted). However, plaintiff's statements about his functioning do not suggest that he was spending a substantial part of his day engaged in pursuits that would be transferable to a work setting. Plaintiff did report that he did household chores, laundry and some yard word, but he also reported that "[i]t takes a LONG time, and I work at it every day"[46] and that he asks his grandson "for help [with] chores, and . . . get[s] some help from neighbors."[47] Plaintiff did report that he goes grocery shopping "3 or 4 times a week" but he also reported that he does not go for "long. Maybe 1/2 hour. Short trips are best."[48] As for driving, although plaintiff reported in 2017 that he was still driving, by the

---

[44]Admin. Rec. at 25.

[45]Admin. Rec. at 25.

[46]Admin. Rec. at 304.

[47]Admin. Rec. at 304.

[48]Admin. Rec. at 305.

-17-

time of the administrative hearing, plaintiff testified that he had to arrange to get rides to his medical appointments.[49] And while plaintiff did report that he managed his personal finances, read magazines and novels, watched movies, played the guitar, and did crossword puzzles, there is no indication that plaintiff was able to do these activities for a substantial part of his day. In fact, at the hearing, plaintiff testified that "after I've been up for a couple of hours, I mean, I try to stay active, but I've, I've got to lay back down again."[50] As for caring for his wife, plaintiff reported that at one point, he had "a caretaker for 2 hours a day so he is able to go out into the yard and do work."[51]

Because the ALJ erred in discounting plaintiff's pain and symptom statements as they relate to his bilateral foot pain, the court must consider whether to remand this matter for an award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for

___

[49]Admin. Rec. at 44.

[50]Admin. Rec. at 44.

[51]Admin. Rec. at 505.

rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

Here, a remand for further proceedings is appropriate so that the ALJ may determine what limitations flow from plaintiff's bilateral foot pain and how those limitations impact plaintiff's capacity to perform his past relevant work and/or other work.

## Conclusion

Based on the foregoing, the final decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 12th day of March, 2021.

/s/ H. Russel Holland
United States District Judge